**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| WILKINS McNAIR, JR. | * | Civil No. CCB-11-1902<br>Criminal No. CCB-06-0281 |
| v. | * | |
| | * | Civil No. CCB-12-3546<br>Criminal No. CCB-09-0320 |
| UNITED STATES OF AMERICA | * | |

******

## MEMORANDUM

Now pending before the court are two motions to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and a number of related motions filed by Wilkins McNair, Jr. ("McNair"). Also pending are two motions to dismiss, filed by the government in Criminal No. 09-0320 ("2009 case"). McNair's first motion to vacate challenges his sentence in Criminal No. 06-0281 ("2006 case") of fifty-one months for wire fraud, money laundering, and various tax offenses. The second challenges his sentence in the 2009 case of seventy months for wire fraud and witness tampering. The court has reviewed all the briefs in the above-captioned cases, as well as the extensive correspondence received from both McNair and the government. For the reasons stated below, McNair's motions to vacate will be denied, as will all his other pending motions. The government's motions to dismiss will be granted.[1]

## BACKGROUND

The procedural background of the 2006 case is summarized in detail in the government's opposition brief, (*see* ECF No. 114), and need not be repeated in its entirety here. On November

[1] As the facts overlap, this Memorandum will be filed in both cases, but a separate order will be entered in each case.

20, 2006, McNair came before Judge Andre M. Davis to enter his guilty plea. The government explains in its opposition that the tape from that proceeding was subsequently lost, and the court reporter's transcription "is not intelligible to other court reporters." (*Id.* at 35–36.) Because a transcript of the guilty plea is not available, when McNair attempted to appeal his convictions in the 2006 case, the Fourth Circuit remanded the matter to this court to recreate what had occurred at the plea colloquy.[2] Thus, Judge Davis has since testified about the plea colloquy,[3] as have one of McNair's trial lawyers, Mirriam Seddiq,[4] an Internal Revenue Agent who was present at the proceeding, James Taylor, and McNair himself. Judge Davis recalled that, during the plea colloquy, McNair began "sobbing . . . for several minutes." (Nov. 2, 2009, Hr'g Tr., ECF No. 78, at 11:22–25.) After taking a brief recess, Judge Davis questioned McNair and his counsel about whether the guilty plea should be held at a later time. (*See id.* at 14:13–15:22.) Based on their answers, Judge Davis determined that McNair was ready to proceed, and ultimately accepted his guilty plea.

On July 11, 2007, McNair came before the court for his sentencing hearing, and received a total sentence of fifty-one months. In particular, he was sentenced to fifty-one months for one count of wire fraud, fifty-one months for one count of money laundering, thirty-six months for one count of making and subscribing to a false tax return in 2004, thirty-six months for one count of making and subscribing to a false tax return in 2005, and fifty-one months for one count of willfully failing to collect and pay over tax; all the terms of imprisonment were to run concurrently. Following his sentencing, McNair appealed his convictions to the Fourth Circuit,

[2] By that time Judge Davis had been appointed to the Fourth Circuit, and the case was transferred to the undersigned judge.

[3] Judge Davis testified that his memory of McNair's guilty plea had been refreshed by an article in the *Baltimore Business Journal* discussing the proceeding.

[4] McNair retained as trial counsel Mirriam Seddiq and Ivan J. Bates. Seddiq and Bates had recently opened their own practice.

and, as noted above, the Fourth Circuit remanded to this court. As part of his plea agreement in the 2009 case, however, he agreed to dismiss the appeal. He also agreed to withdraw his challenge to the voluntariness of his November 20, 2006, guilty plea, and to acknowledge that the plea "was knowing and voluntary in all respects." (Plea Agreement in 2009 Case, ECF No. 44, at 5–6.) On July 2, 2010, McNair's counsel moved to dismiss the appeal in the 2006 case, and the Fourth Circuit granted the motion the same day. McNair later filed a timely § 2255 petition, which was docketed on July 11, 2011. He also filed a motion for release on bond pending the disposition of his § 2255 petition and a motion to appoint counsel.

Turning to the 2009 case, on February 5, 2010, McNair pleaded guilty to one count of wire fraud and one count of witness tampering. Those offenses occurred while he was on pretrial release in the 2006 case. On July 8, 2010, following a two-day sentencing hearing, McNair was sentenced to seventy months as to each count, to run concurrently for a total term of seventy months. Additionally, the sentence was to run concurrently with the undischarged term of imprisonment in the 2006 case. Although he had waived his rights to appeal his conviction and sentence pursuant to the plea agreement, McNair noted a timely appeal. On March 1, 2011, McNair's appellate counsel filed an *Anders* brief with the Fourth Circuit, indicating that he could not find meritorious issues for the appeal. Appellate counsel also stated that McNair had expressed dissatisfaction with trial counsel, but acknowledged that an ineffective assistance claim is more appropriate for a § 2255 petition than a direct appeal. The Fourth Circuit affirmed his conviction and sentence on August 1, 2011. *United States v. McNair*, 441 Fed. App'x 214 (4th Cir. 2011). McNair did not file a petition for writ of certiorari to the Supreme Court.

Rather, on November 26, 2012, he filed a motion to vacate.[5] After filing his motion to vacate, McNair filed (1) a motion for release on bond pending the disposition of his § 2255 petition, (2) a motion to reconsider the court's April 30, 2013, order denying his motion to correct judgment, (3) a motion seeking relief from judgment pursuant to Fed. R. Civ. P. 60(b)(3), (4) an emergency motion for immediate relief from judgment pursuant to Fed. R. Civ. P. 60(b)(6), and (5) a motion to appoint counsel. The government then filed a motion to dismiss McNair's § 2255 petition and a motion to dismiss McNair's motions pursuant to Rule 60.

## DISCUSSION

### A. Motion to Vacate Sentence in 2006 Case

McNair argues that his counsel were ineffective during the investigative, trial, and sentencing phases of the 2006 case. He recites a litany of unsupported claims: his lawyers misrepresented their experience and their law firm's resources, lacked competency to represent him, failed to conduct a pretrial investigation or to interview alleged victims, did not provide the government with "defense materials"—including accounting information—that would have revealed the correct loss amount, did not respond to government subpoena requests, failed to file pretrial motions, including a motion to suppress, were not prepared for the sentencing hearing or to represent him at trial, and failed to keep him advised about his case. He also claims that his lawyers provided ineffective assistance in connection with his November 20, 2006, guilty plea. To sustain a claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668, 687 (1984).

[5] The § 2255 petition was docketed on November 29, 2012, but is dated November 26, 2012. The court, giving McNair the benefit of the "prison mailbox rule," considers the petition filed on November 26, 2012. *See Houston v. Lack*, 487 U.S. 266, 270–72, 276 (1988) (explaining that a pro se prisoner's legal papers must be deemed filed on the date he delivers them to prison mailroom authorities).

First, the petitioner must show "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. Specifically, the petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. In evaluating such conduct, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To satisfy the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hill v. Lockhart*, 474 U.S.52, 58–59 (1985) (stating that, in the context of "challenges to guilty pleas based on ineffective assistance of counsel[,] . . . to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

McNair cannot satisfy the *Strickland* test, as all his claims are without merit. As an initial matter, the court notes that there is no testimony from Judge Davis, Seddiq, or Taylor that, during the November 20, 2006, guilty plea, McNair indicated any dissatisfaction with his lawyers' performance. The court agrees with the government that McNair's lawyers performed ably in a case with overwhelming evidence against their client. Seddiq and Bates were appropriately familiar with the evidence in the 2006 case, and, using their professional judgment, negotiated a plea deal with the government and even attempted to secure a sentencing reduction based on cooperation. There is nothing in the record to suggest that McNair's lawyers failed to conduct an adequate investigation or failed to provide the government with exculpatory

documents or information.[6] Nor does the record suggest that his lawyers made any misrepresentations to him. Bates and Seddiq advised McNair that their firm had been recently established, and shared with him their past experiences in criminal matters. (*See* Bates Aff., ECF No. 114-15, at 2–3.) As to McNair's complaint that counsel failed to file pretrial motions, the court cannot decipher any basis for filing a motion to suppress evidence and must conclude that such a motion would have been rejected. In short, counsel provided reasonable professional assistance.

McNair also claims that his guilty plea was not knowing and voluntary. The Supreme Court has explained that "[a] guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal citation and quotation marks omitted). To provide a voluntary guilty plea, the defendant must understand "the true nature of the charge against him." *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (citation and internal quotation marks omitted). If the defendant "does not understand the nature of the constitutional protections that he is waiving . . . or . . . has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt," his guilty plea may be involuntary. *Id.* at 645 n.13; *see also* Fed. R. Crim. P. 11(b) (outlining the requirements for the court to accept a guilty plea).

McNair's challenges to the validity of his guilty plea must be rejected. As stated above, McNair acknowledged under oath that his plea in the 2006 case "was knowing and voluntary in

---

[6] If there was any failure to provide the government with financial records, the court finds the blame lies with McNair. An email exchange between Bates and McNair reveals that, as of April 10, 2007, McNair still had not provided his lawyers with financial records, though he had promised to send them. (*See* Apr. 10, 2007, Email from Bates, ECF No. 114-24, at 1.) According to Bates, McNair did not provide certain documentation until the morning of his sentencing. (*See* Bates Aff., ECF No. 114-15, at 14.)

all respects." (Plea Agreement in 2009 Case at 5–6; *see also* Feb. 5, 2010, Hr'g Tr., ECF No. 48, at 24:23–25:3.) The testimony of Judge Davis, Seddiq, and Taylor also supports that the plea was valid. There is no testimony that, during the November 20, 2006, guilty plea, McNair felt pressured by defense counsel to plead guilty. Additionally, although McNair was taking medications at the time of the guilty plea, there is no testimony that they impeded his ability to understand the proceedings. Judge Davis spoke with McNair about the medications he was taking, and had "no question . . . that Mr. McNair tendered a knowing, intelligent, and voluntary plea and [] adequately answered all of the Court's questions and concerns." (Nov. 2, 2009, Hr'g Tr. at 13:8–15, 17:13–18.) Likewise, there is no testimony that McNair's mental state prevented him from entering a valid guilty plea. Although the guilty plea was briefly suspended when McNair began "sobbing," both he and his counsel told the court that he was able to continue. (*Id.* at 11:22–25, 15:1–18.) Based on those assurances, Judge Davis was "totally satisfied, 100 percent satisfied that Mr. McNair had pulled himself together, was fully aware of what was going on, where he was, and the nature of the proceedings." (*Id.* at 15:14–18.) Seddiq's testimony confirms that McNair was competent to enter the guilty plea after the brief recess. Thus, despite his vague claim that the proceedings were "blurry," (Nov. 6, 2009, Hr'g Tr., ECF No. 79, at 73:10–11), McNair understood that he was pleading guilty and thereby waiving certain rights, and he did so knowingly and voluntarily.

McNair's remaining claims include that: (1) the government breached his plea agreement, (2) there was insufficient evidence to support his convictions, (3) the sentencing judge incorrectly found the loss amount exceeded $1 million, (4) the government violated his speedy trial rights, and (5) he was the victim of selective or vindictive prosecution. The Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal."

*United States v. Frady*, 456 U.S. 152, 165 (1982) (citations omitted). When a petitioner fails to raise a claim on direct appeal, and then seeks to raise it in a § 2255 motion, the procedural default doctrine applies. *See id.* at 167–68. In that situation, the procedural default doctrine bars consideration of the claim unless the petitioner can show: (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice—in other words, the conviction of one who is actually innocent. *See id.*; *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986); *United States v. Maybeck*, 23 F.3d 888, 890 (4th Cir. 1994).

As explained above, McNair dismissed his appeal in the 2006 case pursuant to the plea agreement in the 2009 case. The above five claims, therefore, were not pursued on direct appeal and are barred by procedural default, because McNair cannot show cause and prejudice or actual innocence. McNair voluntarily chose to dismiss his appeal as part of a valid plea agreement negotiated by able counsel. Moreover, there is nothing in the record to suggest that McNair is actually innocent; to the contrary, there was overwhelming evidence against him. McNair's motion to vacate his sentence in the 2006 case will be denied as meritless. Having determined that there is no basis for McNair's § 2255 petition, the court finds that it is not necessary to appoint counsel. McNair's motion to appoint counsel in the 2006 case will be denied, and his motion for release on bond pending the motion to vacate will be denied as moot.

**B. Motion to Vacate Sentence in 2009 Case**

As an initial matter, the court agrees with the government that McNair's motion to vacate in the 2009 case was untimely.[7] Pursuant to 28 U.S.C. § 2255(f)(1), a defendant has one year from "the date on which the judgment of conviction becomes final" to file a petition to vacate,

---

[7] McNair apparently concedes his filing was late, as he argues for equitable tolling of the limitations period.

set aside, or correct sentence. The Supreme Court has held that "[f]or the purpose of starting the clock on § 2255's one-year limitation period, . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Clay v. United States*, 537 U.S. 522, 525 (2003). Applying this holding, McNair's judgment of conviction became final when the time expired for filing a petition for certiorari with the Supreme Court. Because he had ninety days from August 1, 2011, when the Fourth Circuit affirmed his conviction, to file the petition for certiorari, *see* Sup. Ct. R. 13.1, his conviction became final on October 31, 2011. The limitations period for filing his § 2255 expired one year later, on October 31, 2012. Still, McNair did not file his petition until twenty-six days after the expiration of the limitations period, on November 26, 2012.

McNair contends he is entitled to equitable tolling of the limitations period, but the court finds nothing in his § 2255 motion or prolix correspondence that provides any basis for equitable tolling. In *Rouse v. Lee*, the Fourth Circuit explained that "rarely will circumstances warrant equitable tolling." 339 F.3d 238, 246 (4th Cir. 2003). The petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Id.* Certainly, the petitioner's poor health condition may satisfy this three-pronged test for equitable tolling—for example, if the condition renders him unable to assert his legal rights "for a substantial part of the [limitations period]." *See id.* at 248 & n.10 (citation and internal quotation marks omitted) (upholding the district court's determination that the petitioner's health condition did not justify equitable tolling "because he was not in any way incompetent for a substantial part of the [limitations period]").

The court is well aware that McNair suffers serious health challenges, including renal disease, but has no basis to conclude that those challenges prevented him from filing a timely § 2255 petition. Indeed, those challenges did not prevent him from handwriting a coherent and detailed letter, dated October 17, 2012, in which he acknowledged that his § 2255 petition had been "prepared" but was under review. (*See* Oct. 17, 2012, Letter from McNair, ECF No. 123-4, at 3.) Given that his brief was prepared two weeks before the filing deadline, and in light of McNair's understanding that pro se filings are "held to a less stringent standard" than those prepared by a lawyer, (McNair's Opp., ECF No. 115, at 1), there was no reason why he did not place the brief in the mail prior to the October 31 deadline, or ask another person to do so on his behalf. Even accepting that McNair was incapacitated on October 16, was hospitalized from October 18 to October 20, and had three dialysis sessions between his return from the hospital and October 31, (*see* Dr. R. McKittrick's Apr. 3, 2013, Mem., ECF No. 123-1), those limited periods of incapacity occurred more than eleven months into the limitations period and do not excuse his twenty-six day delay in putting his prepared § 2255 petition in the mail. The delay is especially inexcusable in light of the fact that McNair should have anticipated filing a § 2255 petition as early as March 1, 2011, or a full twenty months before the limitations period expired.[8] Thus, although the court regrets McNair's serious health concerns, and indeed allowed him to remain on release for a substantial period of time in connection with his kidney disease, they do not provide a basis for equitable tolling.

McNair also blames the government for his late filing by claiming prosecutorial misconduct. But even if the court were to give credence to that claim—a claim for which there

[8] March 1, 2011, is the date when McNair's appellate counsel filed an *Anders* brief acknowledging that McNair's claim of ineffective assistance of counsel should be pursued in a § 2255 petition, not on direct appeal.

is no support—the government's alleged misconduct had nothing to do with McNair's failure to place his petition in the mail. Finally, although the court recognizes that McNair may have misunderstood when his conviction became "final" to trigger the limitations period, "ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Having determined that there is no basis for equitable tolling, the court will deny McNair's motion to vacate as untimely, and will grant the government's corresponding motion to dismiss. McNair's motion for release on bond pending his motion to vacate will be denied as moot.

Next, as for McNair's motion seeking relief from judgment and emergency motion for immediate relief, the court agrees with the government that they are not valid Rule 60(b) motions. Instead, the motions are attempts to amend or supplement the untimely § 2255 petition, or they are disguised, successive habeas petitions, which are impermissible absent pre-filing authorization from the Fourth Circuit. In *Gonzalez v. Crosby*, the Supreme Court recognized that a Rule 60(b) motion is an appropriate vehicle for seeking relief from a judgment when "neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's . . . conviction." 545 U.S. 524, 533 (2005); *see, e.g.*, *id.* at 532 n.4 (explaining that an individual may properly make a Rule 60(b) motion "when he merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar"). As the Fourth Circuit explained in *United States v. Winestock*, however, "a district court has no discretion to rule on a Rule 60(b) motion that is functionally equivalent to a successive application." 340 F.3d 200, 206 (4th Cir. 2003). In distinguishing "a proper Rule 60(b) motion from a successive [application] in 60(b)'s clothing," the court may consider that "a

motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application, while a motion seeking a remedy for some defect in the collateral review process will generally be deemed a proper motion to reconsider." *Id.* at 207 (citation and internal quotation marks omitted).

Here, neither of McNair's purported Rule 60(b) motions challenges a procedural judgment in a collateral proceeding. Indeed, the court had not ruled on McNair's § 2255 petitions or other pending motions until today. Instead, the motions represent McNair's continued attempt to attack his conviction and sentence in the 2009 case. If treated as attempts to amend or supplement the untimely § 2255 motion, they are also time barred. His motion for relief from judgment challenges his conviction based on claims that the government committed fraud in grand jury proceedings and again in post-sentencing proceedings.[9] Likewise, his emergency motion asks the court to vacate his sentence because of error in calculating the sentencing guidelines range. As McNair recognizes, the court will not treat motions pursuant to Rule 60(b) simply because they are labeled as such. (McNair's Resp., ECF No. 154, at 1–2.) The court will deny McNair's motion for relief from judgment and emergency motion for immediate relief, and will grant the government's corresponding motion to dismiss.

The court next determines there is no basis to reconsider its April 30, 2013, order denying McNair's motion to correct judgment. (*See* ECF No. 128.) McNair continues to seek credit against his sentence for approximately fifteen months spent on release in home confinement. As detailed in the April 30, 2013, order, the period of release was in part to allow McNair to attempt

---

[9] McNair also suggests that the government committed fraud during habeas proceedings by making false statements in a reply brief and in a letter to the court. (*See* McNair's Mot. for Relief from J., ECF No. 144, at 13–16.) The court rejects this suggestion, along with McNair's other claims of fraud, as meritless. Thus, even if McNair's motion seeking relief from judgment were a valid Rule 60(b) motion, it would be denied.

to receive a kidney transplant, an effort which was not successful. Even assuming the court has jurisdiction to consider this issue, settled case law still provides that he is not entitled to credit for time spent on release rather than in official detention. *Reno v. Koray*, 515 U.S. 50, 57 (1995); *United States v. Lominac*, 144 F.3d 308, 318 n.12 (4th Cir. 1998), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000); *see also* 18 U.S.C. § 3585(b). The motion for reconsideration will be denied. Finally, having determined that all of McNair's pending motions in the 2009 case are without merit, the court will deny McNair's motion to appoint counsel in that case.

**CONCLUSION**

For the foregoing reasons, the court will deny all the pending motions filed by McNair in the above-captioned cases, and will not issue a certificate of appealability under 28 U.S.C. § 2253(c). The court will grant the government's motions to dismiss in the 2009 case. Separate orders follow.

February 18, 2014
Date

/s/
Catherine C. Blake
United States District Judge